[Cite as *State v. Baikov*, 2020-Ohio-4876.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

FAYETTE COUNTY


| | | |
|---|---|---|
| STATE OF OHIO, | : | CASE NO. CA2019-11-023 |
| Appellee, | : | O P I N I O N<br>10/13/2020 |
| | : | |
| - vs - | : | |
| | : | |
| MARKUS BAIKOV, | : | |
| Appellant. | : | |


CRIMINAL APPEAL FROM FAYETTE COUNTY COURT OF COMMON PLEAS
Case No. CRI20190250


Jess C. Weade, Fayette County Prosecuting Attorney, 110 E. Court Street, 1st Floor, Washington Court House, Ohio 43160, for appellee

Steven H. Eckstein, 1208 Bramble Ave., Washington Court House, Ohio 43160, for appellant


**M. POWELL, P.J.**

{¶ 1} Appellant, Marcus Baikov, appeals his conviction in the Fayette County Court of Common Pleas for sexual battery.

{¶ 2} On the afternoon of February 2, 2019, the victim and her fiancé went to the home of appellant and his wife. Appellant's wife ("Wife") is a relative of the victim. Appellant

and Wife were in the process of remodeling their house; the men were planning to work on the house while the victim was going to do Wife's hair. Upon arriving at appellant's home, the victim drank a beer, then went to the house next door where she and Wife smoked marijuana. After the two women returned to appellant's home, the victim continued to work on Wife's hair. Sometime during the course of the afternoon or evening, the victim's nine-year-old brother arrived.

{¶ 3} After dinner, the four adults spent the evening together, drinking, playing games, and vaping. The men drank Irish whiskey; the women drank Moscow Mules, a drink containing vodka. The victim recalled drinking two Mules, at least one of which was mixed by appellant, and that she started feeling intoxicated after the first Mule. The victim's fiancé drank to a point of throwing up and was left to sleep in a detached, heated garage on a couch. Although the remaining parties planned to watch a movie in appellant's bedroom, Wife was found asleep there on the bed. Consequently, appellant, the victim, and her brother returned to the kitchen area where the victim and her brother planned to sleep on an air mattress. Appellant set up the air mattress for them. The victim remembered telling Sergeant Charles Kyle of the Fayette County Sheriff's Office that she went to bed around midnight. She was fully clothed then.

{¶ 4} The victim woke up in the middle of the night feeling a pain in her "vaginal area" and inside her rectum. The victim was lying on her side on the air mattress; her buttocks were off the mattress and she was no longer wearing jeans. Opening her eyes, all she could see was the back of her brother's neck. Appellant was behind her, with his arm draped over her and his fingers inside her vagina. Appellant then put his hand on her back, the victim felt a sharp pain in her rectum, and appellant ejaculated "in between [her] butt cheeks on [her] leg." Appellant then got up, retrieved a wet washcloth somewhere in the house, and wiped her off. As appellant went to the bathroom, the victim sent a text to

- 2 -

her fiancé.  It was then 5:31 a.m. on February 3, 2019.

{¶ 5}  The victim went to the hospital where she was interviewed and examined by a sexual assault nurse examiner ("SANE nurse") around 9:20 a.m.  The victim was alert and oriented and did not complain of any pain.  As part of her examination, the SANE nurse took swabs from the victim's vagina, rectum, and posterior superior medial thigh area.  An analysis of the swabs revealed semen matching appellant's DNA.  The victim's blood was also collected at the hospital and subsequently tested.  Robert Belloto, a pharmacology and toxicology expert witness for the defense, testified that the victim's blood alcohol level was between .072 and .194 grams per deciliter of blood with a median value of .115 grams per deciliter at the time of the incident.

{¶ 6}  Although she declined to talk to the police while at the hospital, the victim went to the sheriff's office on February 4, 2019, where she met Sergeant Kyle and provided a written statement.  During a subsequent search of appellant's house that day, Sergeant Kyle observed two empty bottles of vodka.

{¶ 7}  Sergeant Kyle interviewed appellant in April 2019 after receiving the DNA results.   Appellant told the officer that the victim and her fiancé came to his house around 3:30 p.m. on February 2, 2019, and that at some point, the adults started drinking.  The men were drinking Irish whiskey; the victim and Wife were drinking Moscow Mules.  Appellant told the officer that the women drank a brand new bottle of vodka.  Appellant explained he set up the air mattress for the victim and her brother.  He then went to bed.  Upon realizing he had forgotten his phone, he walked back to retrieve it from the kitchen area.  He woke up the next morning around 10:00 a.m. with a "hangover."  Appellant told Sergeant Kyle that "he didn't recall having sex but apparently something happened but I don't remember any kind of sexual activity with anybody."

{¶ 8}  In July 2019, appellant was charged by bill of information with two counts of

sexual battery in violation of R.C. 2907.03(A)(2) and 2907.03(A)(3). The matter proceeded to a jury trial in October 2019. The victim, the SANE nurse, Sergeant Kyle, and a forensic scientist in the DNA field testified on behalf of the state. The pharmacology and toxicology expert testified on behalf of appellant, and Sergeant Kyle was recalled by defense counsel as a witness. Appellant did not testify on his own behalf. Following the state's case-in-chief and again at the close of all the evidence, appellant moved for acquittal pursuant to Crim.R. 29, but his motions were denied by the trial court.

{¶ 9} On October 31, 2019, the jury found appellant guilty as charged on both counts of sexual battery. At sentencing, the trial court merged the R.C. 2907.03(A)(2) sexual battery count with the R.C. 2907.03(A)(3) sexual battery count as allied offenses of similar import. The court then sentenced appellant to 48 months in prison and classified him as a Tier III sex offender.

{¶ 10} Appellant appeals, raising two assignments of error.

{¶ 11} Assignment of Error No. 1:

{¶ 12} THE TRIAL COURT ERRED IN DENYING DEFENDANT-APPELLANT'S CRIM.R. 29 MOTION FOR ACQUITTAL AS THE EVIDENCE PRESENTED WAS INSUFFICIENT TO CONCLUDE THAT GUILT HAD BEEN PROVEN BEYOND A REASONABLE DOUBT IN VIOLATION OF HIS RIGHTS TO DUE PROCESS AND A FAIR TRIAL UNDER THE FIFTH, SIXTH, AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION, AND ARTICLE I, SECTIONS 10 AND 16 OF THE OHIO CONSTITUTION.

{¶ 13} The standard of review for a denial of a Crim.R. 29 motion is the same standard used for reviewing a sufficiency of the evidence challenge. *State v. Robinson*, 12th Dist. Butler No. CA2015-01-013, 2015-Ohio-4533, ¶ 37. When reviewing the sufficiency of the evidence underlying a criminal conviction, an appellate court examines

the evidence to determine whether such evidence, if believed, would support a conviction. *State v. Gross*, 12th Dist. Preble No. CA2018-01-001, 2018-Ohio-4557, ¶ 15. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *Id.*

{¶ 14} Appellant was convicted of sexual battery in violation of R.C. 2907.03(A)(2). Pursuant to that statute, "No person shall engage in sexual conduct with another, not the spouse of the offender, when [t]he offender knows that the other person's ability to appraise the nature of or control the other person's own conduct is substantially impaired."

{¶ 15} Appellant was further convicted of sexual battery in violation of R.C. 2907.03(A)(3). Pursuant to that statute, "No person shall engage in sexual conduct with another, not the spouse of the offender, when [t]he offender knows that the other person submits because the other person is unaware that the act is being committed."

{¶ 16} Appellant argues that his conviction on both counts of sexual battery is not supported by sufficient evidence because the state failed to prove that the victim's ability to appraise the nature of or control her conduct was substantially impaired, and that appellant knew that the victim was either substantially impaired or unaware the sexual act was being committed.

{¶ 17} Although not defined by the Ohio Revised Code, the phrase "substantially impaired" must be given the meaning generally understood in common usage. *State v. Zeh*, 31 Ohio St.3d 99, 103 (1987); *State v. Kaufhold*, 12th Dist. Butler No. CA2019-09-148, 2020-Ohio-3835, ¶ 15. The Ohio Supreme Court has held that "substantial impairment must be established by demonstrating a present reduction, diminution or decrease in the victim's ability, either to appraise the nature of [her] conduct or to control [her] conduct." *Zeh* at 103-104. Substantial impairment may be proven by the victim's own testimony.

- 5 -

*Kaufhold* at ¶ 15.

{¶ 18} Substantial impairment may also be proven by "the testimony of persons who had some interaction with the victim and by permitting the trier of fact to obtain its own assessment of the victim's ability to either appraise or control her conduct." *State v. Z.G.B.*, 12th Dist. Warren No. CA2016-04-029, 2016-Ohio-7195, ¶ 15. When reviewing substantial impairment, "there can be a fine, fuzzy, and subjective line between intoxication and impairment." *State v. Hatten*, 186 Ohio App.3d 286, 2010-Ohio-499, ¶ 23 (2d Dist.). Every alcohol consumption does not lead to a substantial impairment. *State v. Doss*, 8th Dist. Cuyahoga No. 88443, 2008-Ohio-449, ¶18. On the other hand, not "every case requires proof of an unconscious, vomiting, staggering, or slurring victim. Those are just factors to consider in determining whether the victim is substantially impaired by a physical condition." *State v. Freeman*, 8th Dist. Cuyahoga No. 95511, 2011-Ohio-2663, ¶ 19.

{¶ 19} Pursuant to R.C. 2901.22(B), "[a] person acts knowingly, regardless of purpose, when the person is aware that the person's conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when the person is aware that such circumstances probably exist." Furthermore, "[w]hen knowledge of the existence of a particular fact is an element of an offense, such knowledge is established if a person subjectively believes that there is a high probability of its existence and fails to make inquiry or acts with a conscious purpose to avoid learning the fact." *Id.* Absent a defendant's admission regarding his knowledge, whether a person acts knowingly can only be determined from all the surrounding facts and circumstances, including the doing of the act itself. *Kaufhold*, 2020-Ohio-3835 at ¶ 14.

{¶ 20} We find that the state provided sufficient evidence that, if believed, established beyond a reasonable doubt that the victim was substantially impaired and unable to appraise the nature of or control her conduct, and that appellant knew or had

- 6 -

reasonable cause to believe the victim was substantially impaired.

{¶ 21} The victim recalled drinking two Moscow Mules between dinner and midnight and that she felt intoxicated after the first Mule. When asked on cross-examination, "And that's all you had to drink that night?" she replied, "That I can remember." The victim further testified that after she returned to the kitchen area where she planned to sleep, "everything is really fuzzy after that," and that some of the details of what ensued before she went to bed were later filled in by relatives. The state further presented evidence that only the victim and Wife drank vodka, the two women drank a brand new bottle of vodka, and two empty bottles of vodka were observed in appellant's home the day after the incident. The report prepared by the SANE nurse indicates that the victim's blood alcohol serum level was .095 milligrams per deciliter of serum two hours after the incident. This evidence, if believed, established that the victim was substantially impaired as a result of her becoming intoxicated by alcohol.

{¶ 22} The state also presented evidence that following dinner, all four adults were drinking together, the victim and Wife consumed a considerable amount of vodka, and appellant prepared at least one of the two Moscow Mules consumed by the victim. Appellant was present during the entire evening while the victim consumed alcohol, supplied alcohol that led to the victim's impairment, and had knowledge of the amount of alcohol consumed by the victim. In fact, appellant told Sergeant Kyle that the victim and Wife drank a brand new bottle of vodka. Consequently, appellant was privy to and at least partly responsible for the alcohol creating the substantial impairment. Although the victim was not stumbling, slurring her words, or vomiting, appellant knew or had reasonable cause to believe that the victim was substantially impaired due to her alcohol consumption. Furthermore, appellant initiated and engaged in sexual conduct while the victim was asleep. We have held that sleep is a mental or physical condition that is sufficient to substantially

impair a victim's ability to consent to or resist sexual conduct. *See State v. B.J.T.*, 12th Dist. Warren No. CA2016-12-106, 2017-Ohio-8797; *State v. Felton*, 8th Dist. Cuyahoga No. 92295, 2010-Ohio-4105 (a sleeping person cannot appraise the nature of or control her conduct). This evidence, if believed, established that appellant knew or had reasonable cause to believe the victim was substantially impaired by alcohol and sleep.

{¶ 23} We further find that the state provided sufficient evidence that, if believed, established beyond a reasonable doubt that appellant knew or had reasonable cause to believe the victim submitted to the sexual conduct because she was unaware of what was happening.

{¶ 24} The victim testified that she fell asleep fully clothed and that she later woke up with her jeans gone and appellant's fingers in her vagina. As pertinent to this appeal, sexual conduct means "without privilege to do so, the insertion, however slight, of any part of the body * * * into the vaginal or anal opening of another. Penetration, however slight, is sufficient to complete vaginal or anal intercourse." R.C. 2907.01(A).

{¶ 25} The state presented evidence that appellant initiated and engaged in sexual conduct with the victim all while she did not move and did not respond verbally in any manner. The state's evidence further shows that appellant made no attempt to verify that the victim was aware the act was being committed, and thus failed to inquire or acted "with a conscious purpose to avoid learning the fact." R.C. 2901.2(B). Viewing the evidence in a light most favorable to the state, a rational trier of fact, therefore, could have concluded that at the time appellant engaged in sexual conduct with the victim, he knew she was submitting because she was either unconscious or unaware of what was happening. *See State v. Antoline*, 9th Dist. Lorain No. 02CA008100, 2003-Ohio-1130 (the offender's knowledge that the victim submits because of her unawareness is inferred from the victim's testimony that, initially, she was subjectively in a state of unawareness [e.g.,

unconsciousness], during which the offender initiated and engaged in sexual conduct); *State v. Oswald*, 9th Dist. Summit No. 28633, 2018-Ohio-245.

{¶ 26} In light of the foregoing, we find there was sufficient evidence to support appellant's sexual battery conviction under R.C. 2907.03(A)(2) and 2907.03(A)(3).

{¶ 27} Appellant's first assignment of error is overruled.

{¶ 28} Assignment of Error No. 2:

{¶ 29} THE TRIAL COURT ERRED IN ENTERING A FINDING OF GUILTY BECAUSE SUCH VERDICT WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.  FIFTH AND FOURTEENTH AMENDMENTS, UNITED STATES CONSTITUTION, AND ARTICLE I, SECTION 16 OF THE OHIO CONSTITUTION.

{¶ 30} Relying upon the same evidence supporting his sufficiency argument in his first assignment of error, appellant argues that his conviction on both counts of sexual battery is against the manifest weight of the evidence.

{¶ 31} Unlike a challenge to the sufficiency of the evidence, a manifest weight of the evidence challenge examines the "inclination of the greater amount of credible evidence, offered at a trial, to support one side of the issue rather than the other." *Kaufhold*, 2020-Ohio-3835 at ¶ 11.  To determine whether a conviction is against the manifest weight of the evidence, an appellate court must look at the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether in resolving the conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *Id.*  An appellate court will overturn a conviction due to the manifest weight of the evidence only in extraordinary circumstances when the evidence presented at trial weighs heavily in favor of acquittal. *Id.*

{¶ 32} In his defense, appellant presented the testimony of the pharmacology and

toxicology expert and recalled Sergeant Kyle as a witness. The expert witness testified that the victim's blood alcohol level was between .072 and .194 grams per deciliter of blood with a median value of .115 grams per deciliter at the time of the incident. Sergeant Kyle's testimony related to whether the second Moscow Mule consumed by the victim was prepared by her or appellant. Sergeant Kyle testified that while interviewing the victim on February 4, 2019, she stated she had mixed the second Mule. This was in contrast to her trial testimony that appellant mixed the two Moscow Mules she consumed.

{¶ 33} Based on the same evidence we recited with respect to sufficiency, we find that the jury did not clearly lose its way or create a manifest miscarriage of justice in finding appellant guilty of sexual battery in violation of R.C. 2907.03(A)(2) and 2907.03(A)(3). As the trier of fact, the jury was in the best position to see and hear the witnesses, and observe their demeanor, equivocation, and candor when it determined the weight to be given their testimony. *Gross* ¶ 43. Given its verdict, the jury plainly chose to credit the testimony of the victim and conclude that appellant's version, as told to Sergeant Kyle, was not credible. A conviction is not against the manifest weight of the evidence simply because the trier of fact believed the testimony offered by the prosecution. *State v. Lunsford*, 12th Dist. Butler No. CA2019-07-116, 2020-Ohio-965, ¶ 14. The jury heard all of the testimony, considered the evidence, and found the state's theory of the case and its witnesses credible, and we will not disturb the jury's verdict on appeal. Appellant's sexual battery conviction under R.C. 2907.03(A)(2) and 2907.03(A)(3) is therefore not against the manifest weight of the evidence.

{¶ 34} Appellant's second assignment of error is overruled.

{¶ 35} Judgment affirmed.

S. POWELL and PIPER, JJ., concur.