[Cite as *State v. Robinson*, 2015-Ohio-4533.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

CLERMONT COUNTY


STATE OF OHIO,                          :

           Plaintiff-Appellee,            :

                                         :

   - vs -

                                         :

JOSHUA LEE ROBINSON,             :

           Defendant-Appellant.        :

CASE NO. CA2015-01-013

O P I N I O N
11/2/2015


CRIMINAL APPEAL FROM CLERMONT COUNTY COURT OF COMMON PLEAS
Case No. 2014-CR-00043


D. Vincent Faris, Clermont County Prosecuting Attorney, Nicholas Horton, 76 South Riverside Drive, 2nd Floor, Batavia, Ohio 45103, for plaintiff-appellee

Justin T. Gray, Attorney at Law, LLC, Justin T. Gray, 30 North South Street, Wilmington, Ohio 45177, for defendant-appellant


**S. POWELL, P.J.**

{¶ 1} Defendant-appellant, Joshua Lee Robinson, appeals from his conviction in the Clermont County Court of Common Pleas after a jury found him guilty of one count of gross sexual imposition. For the reasons outlined below, we affirm.

{¶ 2} On January 23, 2014, the Clermont County Grand Jury returned an indictment charging Robinson with one count of gross sexual imposition in violation of R.C. 2907.05(A)(4), a third-degree felony. According to the bill of particulars, the charge stemmed

from allegations Robinson sexually abused L.R., a six-year-old girl his wife was babysitting at the time, by pulling down her underwear and touching her vagina while in an upstairs bedroom at his Clermont County home sometime between November 4, 2013 and November 6, 2013. The indictment was then amended to expand the timeframe of the incident to sometime between November 4, 2013 and November 14, 2013. Trial testimony later revealed the incident occurred on November 11, 2013.

{¶ 3} On March 7, 2014, Robinson filed a motion to suppress statements he made while being questioned about the incident by Detective Robert Bradford of the Miami Township Police Department. After holding a hearing on the matter, the trial court denied Robinson's motion to suppress by finding Robinson was not in custody during Detective Bradford's interrogation of him. In so holding, the trial court stated, in pertinent part:

> The Defendant's freedom to leave was not restricted. He was not placed in handcuffs nor was he locked in the back seat of the cruiser. He sat in the front passenger seat and the doors were not locked. The Defendant was never advised that he was under arrest. He was allowed to leave the cruiser and return to his home at the conclusion of the interrogation.
>
> The parties jointly admitted the statements of the Defendant recorded by Det. Bradford while in the cruiser. The Court has reviewed this statement which was approximately 40 minutes in length. The interview can be described as routine conversational in tone. Det. Bradford was calm throughout never raising his voice. Det. Bradford briefly explained the nature of the allegations to the Defendant. At no time during the interrogation did Det. Bradford threaten the Defendant in any manner, such as threatening to take him to jail immediately, call Children's Protective Services to take his young daughter into protective custody nor any other coercive type of threat. Further, Det. Bradford did not take any action to try and overpower, trick, coerce or deceive the Defendant into talking with him.
>
> * * *
>
> Given the totality of the objective circumstances as discussed above, the Court finds that a reasonable person would not have understood that he or she was in custody of Det. Bradford while being questioned, albeit, in a police cruiser, in the driveway of his or her home. Therefore, this Court finds that the Defendant was

not in custody during his interrogation by Det. Bradford. After denying Robinson's motion to suppress, the trial court scheduled the matter for a jury trial to begin on November 17, 2014.

{¶ 4} On November 12, 2014, a mere five days before the jury trial was scheduled to begin, Robinson filed a motion to continue. In support of this motion, Robinson's trial counsel filed an affidavit, wherein he claimed that in reviewing the discovery documents provided to him by state some ten months prior, he "had not seen" that a Traumatic Symptoms Checklist for Young Children (TSCYC) assessment of L.R. had been completed through the Mayerson Center for Safe and Healthy Children at Cincinnati Children's Hospital (Mayerson Center). Robinson's trial counsel also claimed that "to the best of counsel's understanding," the state was likewise not provided with a copy of the TSCYC assessment from the Mayerson Center. To that end, because the state was not provided with a copy, Robinson's trial counsel alleged that he too had not been provided with a copy of the TSCYC assessment through discovery. According to Robinson's trial counsel, "the TSCYC report and assessment [was] discoverable information and could potentially be exculpatory for the Defendant."

{¶ 5} The next day, November 13, 2014, the trial court denied Robinson's motion to continue. The trial court, however, prohibited either party from introducing the TSCYC assessment of L.R. into evidence. The trial court also barred either party from eliciting any testimony regarding the TSCYC assessment at trial. Specifically, as the trial court stated when addressing the issue at trial:

> We had a sidebar conference that was not recorded, but it dealt with the Children's Hospital – part of Children's Hospital report that involved – I'm not sure what the acronym is, but it's traumatic – traumatic event checklist of some sort. * * * And the – there was essentially a motion by the Defendant to redact that portion of the – the report from the – the record that the State's going to present and also to prevent [a social worker and forensic interview from the Mayerson Center] from testifying about that piece of it. It was geared more, primarily it seemed, to the mother than to the child. That report has never been provided to

Counsel, and I've indicated and will so indicate on the record that it will be redacted, and [the social worker] not to ques – not to testify about that particular piece of the protocol that they put in place down there.

Concluding, the trial court stated that if the state wanted to use a TSCYC assessment as part of its case-in-chief in the future, "that's fine; they need to disclose that."

{¶ 6} On November 19, 2014, following a three-day jury trial, the jury returned a verdict finding Robinson guilty as charged. The trial court then sentenced Robinson to four years in prison and imposed a mandatory five-year postrelease control term. The trial court also designated Robinson a Tier II sex offender. Robinson now appeals from his conviction, raising four assignments of error for review. For ease of discussion, Robinson's third assignment of error will be addressed out of order.

{¶ 7} Assignment of Error No. 3:

{¶ 8} THE TRIAL COURT ERRED BY DENYING APPELLANT'S MOTION TO SUPPRESS EVIDENCE.

{¶ 9} In his third assignment of error, Robinson argues the trial court erred by denying his motion to suppress statements he made to Detective Bradford. In support of this claim, Robinson argues he was subject to a custodial interrogation without first being advised of his *Miranda* rights. We disagree.

{¶ 10} Appellate review of a ruling on a motion to suppress presents a mixed question of law and fact. *State v. Gray*, 12th Dist. Butler No. CA2011-09-176, 2012-Ohio-4769, ¶ 15, citing *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, ¶ 8. When considering a motion to suppress, the trial court, as the trier of fact, is in the best position to weigh the evidence in order to resolve factual questions and evaluate witness credibility. *State v. Vaughn*, 12th Dist. Fayette No. CA2014-05-012, 2015-Ohio-828, ¶ 8. In turn, when reviewing the denial of a motion to suppress, this court is bound to accept the trial court's findings of

fact if they are supported by competent, credible evidence. *State v. Durham*, 12th Dist. Warren No. CA2013-03-023, 2013-Ohio-4764, ¶ 14. "An appellate court, however, independently reviews the trial court's legal conclusions based on those facts and determines, without deference to the trial court's decision, whether as a matter of law, the facts satisfy the appropriate legal standard." *State v. Cochran*, 12th Dist. Preble No. CA2006-10-023, 2007-Ohio-3353, ¶ 12.

{¶ 11} It is well-established that the "'prosecution may not use statements, whether exculpatory or inculpatory, stemming from a custodial interrogation unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination.'" *State v. Huysman*, 12th Dist. Warren No. CA2005-09-107, 2006-Ohio-2245, ¶ 13, quoting *Miranda v. Arizona*, 384 U.S. 436, 444, 86 S.Ct. 1602 (1966). In turn, the issuance of *Miranda* warnings is only required when the police subject a person to custodial interrogation. *State v. Byrne*, 12th Dist. Butler Nos. CA2007-11-268 and CA2007-11-269, 2008-Ohio-4311, ¶ 10, citing *State v. Biros*, 78 Ohio St.3d 426, 440 (1997). "Encompassed in this definition are two distinct concepts: custody and interrogation." *State v. Staley*, 12th Dist. Madison No. CA99-08-019, 2000 WL 554512, *3 (May 8, 2000). The only issue in this case, however, is whether Robinson was in custody at the time he was interrogated by Detective Bradford.

{¶ 12} In determining whether an individual was in custody during an interrogation, the court must examine the totality of the circumstances surrounding the interrogation. *State v. Coleman*, 12th Dist. Butler No. CA2001-10-241, 2002-Ohio-2068, ¶ 23. A person is in custody if he is formally placed under arrest prior to a police interrogation, or, if not formally arrested, when there is a significant restraint on his freedom of movement. *State v. Smith*, 12th Dist. Fayette No. CA2006-08-030, 2009-Ohio-197, ¶ 11. Such a determination "depends on the objective circumstances of the interrogation, not on the subjective views harbored by either the interrogating officers or the person being questioned." *State v. Henry*,

12th Dist. Preble No. CA2008-04-006, 2009-Ohio-434, ¶ 13. Therefore, "[i]n judging whether an individual has been placed into custody the test is whether, under the totality of the circumstances, a 'reasonable person would have believed that he was not free to leave.'" *State v. Gumm*, 73 Ohio St.3d 413, 429 (1995), quoting *United States v. Mendenhall*, 446 U.S. 544, 554, 100 S.Ct. 1870 (1980).

{¶ 13} Here, Robinson argues the trial court erred by denying his motion to suppress because "[c]learly no one who is the suspect of a crime and told as much would feel free to leave when questioned in a police car by an identified law enforcement detective parked [100] feet from their home when that person is not told they can leave on their own will." However, just as the trial court found, we find a reasonable person in Robinson's position would believe that he was free to leave since his freedom of movement was not restricted in any way. As the record reveals, Robinson was neither handcuffed, nor was he locked in the back of Detective Bradford's unmarked police cruiser. Instead, Robinson sat in the front passenger seat with the doors unlocked at all times.

{¶ 14} Moreover, as Detective Bradford testified, "I asked Mr. Robinson if he'd mind stepping outside, he got his shoes on. It was cold that day. I asked him if he wanted to go to my vehicle to – so we could talk, and he agreed." The record also reveals that Detective Bradford never threatened Robinson and never told Robinson that he was under arrest or that he was not free to leave. In fact, when asked if Robinson was free to leave at any time, Detective Bradford testified, "Yes, he was." Detective Bradford further testified that Robinson was not in custody at any point "before, during or immediately afterwards he was not in custody during this interview with him."

{¶ 15} As this court has stated previously, a person is not in custody merely because he is considered a suspect. *Durham*, 2013-Ohio-4764 at ¶ 17. Moreover, "[t]he fact that the conversation took place in a police cruiser, alone, does not mean that appellant was in

custody." *State v. Baker*, 12th Dist. Preble No. CA2007-04-009, 2008-Ohio-1884, ¶ 14. In addition, while it may be true that Detective Bradford never explicitly told Robinson he was free to leave, Robinson also never asked to leave during the approximately 40 minutes he was being questioned. Therefore, because Robinson was not placed under arrest, and because there was not a significant restraint on Robinson's freedom of movement, we find the trial court did not err by denying Robinson's motion to suppress. Again, under the totality of the circumstances, a reasonable person in Robinson's position would have believed that he was free to leave. Accordingly, Robinson's third assignment of error lacks merit and is overruled.

{¶ 16} Assignment of Error No. 1:

{¶ 17} THE TRIAL COURT ERRED BY DENYING APPELLANT'S MOTION TO CONTINUE THE JURY TRIAL BASED ON THE DEFENSE NOT BEING PROVIDED WITH AN ASSESSMENT ENTITLED "TSCYC" AND DEFENSE COUNSEL'S REQUEST FOR ADDITIONAL TIME TO INVESTIGATE AND REVIEW THE SAME.

{¶ 18} In his first assignment of error, Robinson argues the trial court erred by denying his motion for a continuance after he learned "in the final stages of preparation for trial" that a TSCYC assessment of L.R. at the Mayerson Center had not been provided to him through discovery. In support of this claim, Robinson argues the state's failure to provide him with a copy of the TSCYC assessment violated the discovery rules provided by Crim.R. 16 and entitled him to a continuance so that he could investigate and review the same. We disagree.

{¶ 19} It is well-established that "[a] trial court has broad discretion in determining whether to grant or deny a continuance." *State v. Bullock*, 12th Dist. Clermont No. CA2005-04-031, 2006-Ohio-598, ¶ 12, citing *State v. Unger*, 67 Ohio St.2d 65, 67 (1981). In turn, this court will not reverse the trial court's decision to deny a defendant's motion for a continuance

absent an abuse of discretion. *State v. Glowka*, 12th Dist. Butler No. CA2012-10-203, 2013-Ohio-3080, ¶ 8. An abuse of discretion "connotes more than an error of law or of judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable." *State v. Jackson*, 107 Ohio St.3d 53, 2005-Ohio-5981, ¶ 181. While there is no bright-line test for determining whether a continuance should be allowed, as noted by the Ohio Supreme Court, the trial court should be guided by consideration of several factors, "including the length of the requested delay, whether other continuances have been requested and received, the inconveniences likely to result, the reasons for the delay, and whether the defendant contributed to the circumstances giving rise to the need for delay." *State v. Franklin*, 97 Ohio St.3d 1, 2002-Ohio-5304, ¶ 18.

{¶ 20} As noted above, although noting its existence as part of its discovery documents, it is undisputed the state did not provide Robinson with a copy of the TSCYC assessment through discovery. However, even if we were to assume this constituted a violation of Crim.R. 16, as stated by the Ohio Supreme Court, "[p]rosecutorial violations of Crim.R. 16 are reversible only when there is a showing that (1) the prosecution's failure to disclose was a willful violation of the rule, (2) foreknowledge of the information would have benefited the accused in the preparation of his defense, and (3) the accused suffered some prejudicial effect." *State v. Joseph*, 73 Ohio St.3d 450, 458 (1995).

{¶ 21} Moreover, pursuant to Crim.R. 16(L)(1), "when a party fails to provide discovery, the trial court may, inter alia, grant a continuance, prohibit the party from introducing into evidence the undisclosed material, or make any other order it deems just under the circumstances." *State v. Proby*, 10th Dist. Franklin No. 14AP-1067, 2015-Ohio-3364, ¶ 33. "[S]anctions for a Crim.R. 16 discovery violation are within the discretion of the trial court." *State v. Palmer*, 12th Dist. Butler Nos. CA2013-12-243 and CA2014-01-014, 2014-Ohio-5491, ¶ 39, citing *State v. Parson*, 6 Ohio St.3d 442, 445 (1983). When deciding

on a sanction, the trial court must impose the least severe sanction that is consistent with the purpose of the rules of discovery. *State v. Retana*, 12th Dist. Butler No. CA2011-12-225, 2012-Ohio-5608, ¶ 53.

{¶ 22} In this case, the record is devoid of any evidence to indicate the state's failure to provide Robinson with a copy of the TSCYC assessment was in any way willful. This is particularly true here given the fact that there is no evidence that the state ever received a copy of the TSCYC assessment itself, nor any indication that the state planned to use the TSCYC assessment as evidence at trial. There is also nothing in the record to indicate that foreknowledge of any information contained in the TSCYC assessment would have benefitted Robinson in the preparation of his defense. It is undisputed that a TSCYC assessment merely consists of a 90-item questionnaire used to assess symptoms of post-traumatic stress disorder in children that is generally completed by the alleged child victim's parent or caregiver. The TSCYC assessment, therefore, would not have provided Robinson with any material or exculpatory evidence that he was not the perpetrator of the sexual abuse alleged by L.R.

{¶ 23} Finally, there is nothing in the record to indicate Robinson suffered any prejudicial effect resulting from the state's failure to provide him with a copy of the TSCYC assessment through discovery. As noted above, because the state had not provided Robinson a copy of the TSCYC assessment, the trial court prohibited either party from introducing the TSCYC assessment into evidence and also barred either party from eliciting any testimony regarding the TSCYC assessment at trial. Therefore, even assuming the state's failure to provide Robinson with the TSCYC assessment did constitute a discovery violation, because sanctions for any alleged discovery violation are within the sound discretion of the trial court, we find no abuse of discretion in the trial court's decision denying Robinson's motion for continuance, a motion that was filed a mere five days before the jury

trial was scheduled to begin, as opposed to merely prohibiting the state from introducing any evidence regarding the TSCYC assessment at trial.[1]   Accordingly, Robinson's first assignment of error is without merit and overruled.

{¶ 24} Assignment of Error No. 2:

{¶ 25} THE TRIAL COURT ERRED BY ALLOWING INTO EVIDENCE INADMISSABLE (sic) HEARSAY.

{¶ 26} In his second assignment of error, Robinson argues the trial court erred by admitting inadmissible hearsay into evidence. To that end, Robinson initially argues the trial court erred by finding L.R.'s statements she made to her father detailing the sexual abuse against her approximately one week after the sexual abuse occurred were admissible under the excited utterance exception to the hearsay rule as found in Evid.R. 803(2). We disagree.

{¶ 27} Pursuant to Evid.R. 803(2), an excited utterance is "a statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition." A hearsay statement is admissible as an excited utterance if (1) there was an event startling enough to produce a nervous excitement in the declarant, (2) the statement was made while under the stress of excitement caused by the event, (3) the statement related to the startling event, and (4) the declarant must have had an opportunity to personally observe the startling event. *State v. Worth*, 10th Dist. Franklin No. 10AP1125, 2012-Ohio-666, ¶ 22, citing *State v. Taylor*, 66 Ohio St.3d 295, 300-301 (1993).

{¶ 28} There is no per se amount of time after which a statement can no longer be considered to be an excited utterance. *State v. Sims*, 12th Dist. Butler No. CA2007-11-300, 2009-Ohio-550, ¶ 14. Rather, in analyzing whether a statement is an excited utterance,

---

1. Without providing any opinion on the matter, we question whether a TSCYC assessment is required to be disclosed pursuant to Crim.R. 16(B)(3), (B)(4) and (E)(1) as the trial court found. As the state indicated at trial, a TSCYC assessment is not kept as part of the child's medical records and is not used as a diagnostic tool of any kind. That issue, however, is not made a part of this appeal.

- 10 -

"'[t]he controlling factor is whether the declaration was made under such circumstances as would reasonably show that it resulted from impulse rather than reason and reflection.'" *State v. Nixon*, 12th Dist. Warren No. CA2011-11-116, 2012-Ohio-1292, ¶ 13, quoting *State v. Humphries*, 79 Ohio App.3d 589, 598 (12th Dist.1992). Whether a hearsay statement is admissible as an excited utterance is reviewed under an abuse of discretion standard. *State v. Henry*, 12th Dist. Clermont Nos. CA2013-12-095 and CA2013-12-097, 2014-Ohio-4624, ¶ 55.

{¶ 29} In support of this claim, Robinson argues L.R.'s statements to her father were not admissible under the excited utterance exception because her father's testimony merely indicated L.R. was "a little bit uneasy," "a little bit fidgety," "a little broken up" and "a little bit shaken" with "increasing stuttering or stammering" and "nervousness" when speaking to him about the sexual abuse. However, as this court has stated previously, "[a] reviewing court should give the trial court wide discretion when the trial court decides that statements made by a child-victim about sexually abusive acts qualify as excited utterances." *State v. Ashcraft*, 12th Dist. Butler No. CA97-11-217, 1998 WL 667657, *5 (Sept. 28, 1998), citing *State v. Wagner*, 30 Ohio App.3d 261, 263 (8th Dist.1986). This is because "[c]hildren are likely to remain in a state of nervous excitement longer than adults would and are less capable of reflective thought." *State v. Ames*, 12th Dist. Butler No. CA2000-02-024, 2001 WL 649734, *5 (June 11, 2001), citing *Taylor*, 66 Ohio St.3d at 304. Therefore, although the testimony as to whether L.R. was still under the stress of excitement caused by Robinson's sexual abuse against her was somewhat limited, we find no abuse of discretion in the trial court's decision finding L.R.'s statements to her father were admissible as an excited utterance.

{¶ 30} Regardless, even if we were to find some error in the trial court's decision, which we do not, any such error would be harmless. As this court has stated previously, "[t]he admission of hearsay evidence is harmless error where it is merely cumulative." *State*

*v. Kelley*, 12th Dist. Warren No. CA95-07-073, 1996 WL 31154, *3 (Jan. 29, 1996), citing *State v. Williams*, 38 Ohio St.3d 346, 353 (1988). In other words, "in those cases 'where a declarant is examined on the same matters as contained in impermissible hearsay statements and where admission is essentially cumulative, such admission is harmless.'" *State v. Sims*, 12th Dist. Butler No. CA2007-11-300, 2009-Ohio-550, ¶ 17, quoting *State v. Tomlinson*, 33 Ohio App.3d 278, 281 (12th Dist.1986). Therefore, because L.R. took the stand and testified consistent with the statements attributed to her by her father, any error the trial court may have made in admitting L.R.'s statements to her father would constitute, at worst, harmless error. Accordingly, Robinson's first argument is without merit.

{¶ 31} Next, Robinson argues the trial court erred by permitting L.R.'s father to testify as to statements made by a police officer directing him to the proper police department in order for him to file a police report. Robinson also argues the trial court erred by permitting L.R.'s mother to testify that a detective informed her that an appointment had been scheduled for L.R. at the Mayerson Center. We again disagree.

{¶ 32} Here, just as the trial court found, we find the disputed statements made by the police to L.R.'s father and mother were admissible non-hearsay statements used to explain their actions after speaking with police. As the Ohio Supreme Court has stated, "it is well established that extrajudicial statements made by an out-of-court declarant are properly admissible to explain the actions of a witness to whom the statement was directed." *State v. Thomas*, 61 Ohio St.2d 223, 232 (1980). In other words, "[t]estimony not offered for the truth, but to explain the actions of a witness to whom the statement was directed, such as to explain the witness's activities, is not hearsay." *State v. Smith*, 12th Dist. Butler Nos. CA2000-05-093 and CA2000-05-095, 2001 WL 503485, *5 (May 14, 2001). Therefore, because the disputed statements were admissible non-hearsay statements used to explain the actions of father and mother after speaking with police; namely, filing a police report and

taking their daughter to the Mayerson Center, we find no err in the trial court's decision to admit the statements at trial. Accordingly, Robinson's second argument is likewise without merit.

{¶ 33} In light of the foregoing, and having found no merit to either of the arguments advanced by Robinson herein, Robinson's second assignment of error is overruled.

{¶ 34} Assignment of Error No. 4:

{¶ 35} THE TRIAL COURT ERRED BY DENYING APPELLANT'S MOTION FOR JUDGMENT OF ACQUITTAL PURSUANT TO CRIMINAL RULE 29(A).

{¶ 36} In his fourth assignment of error, Robinson argues the trial court erred by denying his Crim.R. 29(A) motion for acquittal as there was insufficient evidence to support his conviction for gross sexual imposition. We disagree.

{¶ 37} "A Crim.R. 29 motion is asserted to test the sufficiency of the evidence." *State v. McMurray*, 12th Dist. Preble No. CA2014-08-008, 2015-Ohio-2827, ¶ 37. Specifically, Crim.R. 29(A) provides, in pertinent part, that a trial court "on motion of a defendant or on its own motion, after the evidence on either side is closed, shall order the entry of a judgment of acquittal on one or more offenses charged in the indictment, * * * if the evidence is insufficient to sustain a conviction of such offense or offenses." Therefore, the standard of review for a denial of a Crim.R. 29 motion is the same as the standard of review for a sufficiency of the evidence claim. *State v. Conley*, 12th Dist. Warren No. CA2013-06-055, 2014-Ohio-1699, ¶ 14, citing *State v. Carter*, 72 Ohio St.3d 545, 553 (1995).

{¶ 38} Whether the evidence presented at trial is legally sufficient to sustain a verdict is a question of law. *State v. Hoskins*, 12th Dist. Warren No. CA2013-02-013, 2013-Ohio-3580, ¶ 16, citing *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997). When reviewing the sufficiency of the evidence underlying a criminal conviction, an appellate court examines the evidence in order to determine whether such evidence, if believed, would convince the

average mind of the defendant's guilt beyond a reasonable doubt. *State v. Kinsworthy*, 12th Dist. Warren No. CA2013-06-053, 2014-Ohio-1584, ¶ 52. The relevant inquiry is "'whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.'" *State v. Smith*, 12th Dist. Warren Nos. CA2012-02-017 and CA2012-02-018, 2012-Ohio-4644, ¶ 25, quoting *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus. In other words, "the test for sufficiency requires a determination as to whether the state has met its burden of production at trial." *State v. Boles*, 12th Dist. Brown No. CA2012-06-012, 2013-Ohio-5202, ¶ 34, citing *State v. Wilson*, 12th Dist. Warren No. CA2006-01-007, 2007-Ohio-2298, ¶ 33. When evaluating the sufficiency of the evidence, this court defers to the trier of fact regarding questions of credibility. *State v. Kirkland*, 140 Ohio St.3d 73, 2014-Ohio-1966, ¶ 132.

{¶ 39} As noted above, Robinson was convicted of gross sexual imposition in violation of R.C. 2907.05(A)(4). Pursuant to that statute, "[n]o person shall have sexual contact with another, not the spouse of the offender, * * * when * * * [t]he other person * * * is less than thirteen years of age, whether or not the offender knows the age of that person." The term "sexual contact" as defined by R.C. 2907.01(B) means "any touching of an erogenous zone of another, including without limitation the thigh, genitals, buttock, pubic region * * * for the purpose of sexually arousing or gratifying either person."

{¶ 40} Initially, Robinson claims the trial court erred by denying his Crim.R. 29(A) motion for acquittal since any contact he may have had with L.R.'s vagina was "purely accidental." However, as L.R. testified:

> [Robinson] pulled my pants down and he tickled me in my front private, and then he pulled my pants up. And he put a blindfold on me and told me to lay down, and I laid down on the – [his daughter's] bed. And he – he pulled my pants down again, and he tickled me in my front private, and I said, stop, my mom said nobody is – can touch me there. And he pulled my – he

stopped, and he pulled my pants [up] and got [a toy] and went downstairs.

L.R. also testified Robinson told her to "keep it a secret" that he "touched [her] there."  In addition, when asked what was the truth, L.R. testified "[t]he truth is that [Robinson] touched me in the wrong spot."  L.R.'s testimony describing the sexual abuse was consistent with the statements she gave to her father and to the social worker at the Mayerson Center.

{¶ 41} "A jury is in the best position to take into account the witnesses' demeanor and thus to assess their credibility, and therefore is entitled to believe or disbelieve all, part, or none of the testimony of a witness." *State v. Freeze*, 12th Dist. Butler No. CA2011-11-209, 2012-Ohio-5840, ¶ 90.  Moreover, "[t]here is nothing in the law that requires that a sexual assault victim's testimony be corroborated as a condition precedent to conviction." *State v. West*, 10th Dist. Franklin No. 06AP-111, 2006-Ohio-6259, ¶ 16.  Therefore, because L.R.'s testimony, standing alone, was sufficient to prove any contact Robinson may have had with L.R.'s vagina was not merely an accident, Robinson's first argument lacks merit.

{¶ 42} Next, Robinson claims his conviction must be reversed because there was no evidence that any contact he may have had with L.R.'s vagina was for the purpose of gratifying or arousing either person, an essential element of the offense. Yet, while we agree that an essential element of the offense is that the act was for the "purpose of sexual arousal or gratification," contrary to Robinson's claims otherwise, there is no requirement that there be direct testimony regarding sexual arousal or gratification.  *State v. Meredith*, 12th Dist. Warren No. CA2004-06-062, 2005-Ohio-062, ¶ 13.

{¶ 43} Rather, "'[w]hether the touching was performed for the purpose of sexual arousal or gratification is a question of fact to be inferred from the type, nature, and circumstances of the contact.'"  *State v. Williams*, 12th Dist. Warren No. CA2012-08-080, 2013-Ohio-3410, ¶ 33, quoting *State v. Gesell*, 12th Dist. Butler No. CA2005-08-367, 2006-Ohio-3621, ¶ 25.  In making this determination, "the trier of fact is permitted to infer what the

defendant's motivation was in making the physical contact with the victim." *State v. English*, 12th Dist. Butler No. CA2013-03-048, 2014-Ohio-441, ¶ 69. Therefore, "[i]f the trier of fact determines that the defendant was motivated by desires of sexual arousal or gratification, and that the contact occurred, then the trier of fact may conclude that the object of the defendant's motivation was achieved." *State v. Pence*, 12th Dist. Warren No. CA2012-05-045, 2013-Ohio-1388, ¶ 72.

{¶ 44} After a thorough review of the record, we find the jury could reasonably conclude that Robinson's act of touching L.R.'s vagina was done for the purpose of sexual arousal or gratification. Again, as L.R. testified, Robinson pulled down her pants and "tickled" her vagina. Robinson then blindfolded L.R., instructed her to lie down on a bed, pulled down her pants, and "tickled" her vagina again. Robinson then told L.R. to "keep it a secret" that he "touched [her] there." L.R.'s testimony, which we again note was consistent with the statements she gave to her father and to the social worker at the Mayerson Center, supported an inference that Robinson's actions were for the purpose of sexually arousing or gratifying himself. *E.g.*, *Williams* at ¶ 34 (evidence from minor victims that appellant rubbed their genitals only when other adults were absent from the home and instructed them not to tell anyone about the touching supported an inference that appellant's actions was for the purpose of sexual arousal or gratification). Therefore, Robinson's second argument also lacks merit.

{¶ 45} In light of the foregoing, and again having found no merit to either of the arguments advanced by Robinson herein, Robinson's fourth assignment of error is overruled.

{¶ 46} Judgment affirmed.

RINGLAND and HENDRICKSON, JJ., concur.